UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS DER-HACOPIAN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DARKTRACE, INC.,<br><br>　　　　Defendant. | Case No. 18-cv-06726-HSG<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: Dkt. No. 47 |

　　　　Pending before the Court is the unopposed motion for preliminary approval of class action settlement filed by Plaintiff Nicholas Der-Hacopian. Dkt. No. 47. The parties have reached a settlement regarding Plaintiff's claims and now seek the required court approval. The Court held a hearing on February 13, 2020. *See* Dkt. No. 48. For the reasons detailed below, the Court **GRANTS** Plaintiff's motion for preliminary approval of class action settlement.

**I.　BACKGROUND**

　　**A.　Factual Background**

　　　　Plaintiff brings this consumer class action against Defendant Darktrace, Inc. alleging that Defendant violated the Fair Credit Reporting Action ("FCRA"), 15 U.S.C. §§ 1681 *et seq. See generally* Dkt. No. 23 ("FAC"). As part of its employment application process, Defendant requires consumer reports, known as background checks, to evaluate prospective employees. *See id.* at ¶ 13. In July 2018, Plaintiff applied for a job with Defendant. *See id.* at ¶ 12. At Defendant's request, Plaintiff agreed to Defendant's requirement that he authorize Defendant, and a consumer reporting agency of its choosing, to perform a background check on Plaintiff. *Id.* at ¶¶ 14–15, 22. Plaintiff signed a document titled "Employee Authorization to Release Records" (the "Authorization"). *Id.* at ¶¶ 15–16, & Ex. A. Plaintiff alleges that the background check

1  contained erroneous information, and Defendant denied Plaintiff employment based on the
2  information in the report. *See id.* at ¶¶ 18–22, 32–33. As a result, Plaintiff contends that he
3  suffered financial and reputational harm. *See id.* at ¶ 36.
4          According to Plaintiff, Defendant violated the FCRA with these background checks by
5  (1) including a release of future liability in the Authorization that it required employment
6  applicants to sign authorizing a background check; and (2) using the background check to make an
7  adverse employment decision without timely providing the prospective employee with a copy of
8  the report and a summary of his or her rights under the FCRA. *See id.* at ¶¶ 15–27, & Ex. A.
9  Section 1681b(b)(2) requires consumer report authorizations to consist "solely of the disclosure
10 that a consumer report may be obtained for employment purposes." 15 U.S.C.
11 § 1681b(b)(2)(A)(i). And § 1681b(b)(3) requires that "in using a consumer report for employment
12 purposes, before taking any adverse action based in whole or in part on the report, the person
13 intending to take such adverse action shall provide to the consumer to whom the report relates" a
14 copy of the report and a written description of the consumer's rights under the FCRA. *See* 15
15 U.S.C. § 1681b(b)(3)(A)(i), (ii). Based on those facts, the FAC asserted two causes of action
16 under Sections 1681(b)(2) and (b)(3) of the FCRA. *See* FAC at ¶¶ 45–58. Plaintiff also sought to
17 represent two classes of consumers based on each claim, defined as:

> All natural persons residing within the United States and its Territories regarding whom, beginning five (5) years prior to the filing of this Complaint and continuing through the conclusion of this action, the Defendant procured or caused to be procured a consumer report for employment purposes using a written disclosure containing language substantially similar in form to the Employee Authorization to Release Records form provided to Plaintiff; and

> All natural persons residing in the United States who (i) within five (5) years prior to the filing of the Complaint, (ii) applied for employment with Defendant, (iii) were the subject of a consumer report used by Defendant for employment purposes, (iv) were the subject of an adverse employment action by Defendant, and (iv) were not provided with a copy of the report and/or a written summary of their rights under the FCRA prior to the adverse action.

*See id.* at ¶ 38.

//

**B.     Procedural History**

Plaintiff initially filed this action on November 6, 2018. *See* Dkt. No. 1. Plaintiff then filed his first amended complaint on January 16, 2019. *See* FAC. The parties did not engage in motions practice; instead, Defendant answered the complaint on January 30, 2019. *See* Dkt. No. 30. On April 24, 2019, the parties engaged in an all-day mediation before Michael Loeb of JAMS, though the parties did not reach settlement that day. *See* Dkt. No. 39. However, the parties continued settlement discussions after the conclusion of the mediation. *See* Dkt. No. 40. They reached a class settlement in principle on June 20, 2019. *See* Dkt. No. 47 at 3. With the assistance of Mr. Loeb, the parties entered into a settlement agreement on November 21, 2019. *See* Dkt. No. 47-1. Plaintiff then filed the unopposed motion for preliminary settlement approval on November 21, 2019. *See* Dkt. No. 43 (refiled at Dkt. No. 47).

On March 31, 2020, the Court requested supplemental briefing from the parties regarding the scope of the settlement release. *See* Dkt. No. 52. The Court raised concerns that although the allegations were relatively narrow, the release of claims in the settlement agreement as then written was quite expansive. *Id.* The Ninth Circuit has cautioned, however, that "[a] settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but *only where the released claim is based on the identical factual predicate as that underlying the claims* in the settled class action." *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (quotations omitted) (emphasis added). In response, the parties agreed to narrow the scope of the release of claims. *See* Dkt. No. 53. They submitted a revised Settlement Agreement, Dkt. No. 53-1, Ex. A ("SA"), and a revised Notice of Settlement, Dkt. No. 53-2, Ex. B.

   **i.     Settlement Agreement**

The key terms of the parties' settlement are as follows:

<u>Class Definition</u>:  The Settlement Class is defined as:

> [A]ll applicants for employment with and employees of DarkTrace from whom DarkTrace obtained the individual's consent to procure a consumer report using a form document substantially similar to the authorization form signed by Plaintiff; and procured or caused to be procured a consumer report, as defined by the FCRA, between

3

1    November 5, 2016 and the date the Final Judgment and Order approving this Settlement Agreement is entered by the Court.

2    SA at ¶ III.C.

3    Settlement Benefits:  The parties have agreed to both non-monetary and monetary relief. Moving forward, Defendant will comply with the disclosure, authorization, and notice practices relating to obtaining consumer reports and the provision of consumer reports and summaries of rights referenced in §§ 1681b(b)(2)(A)(i) and 1681b(b)(3) of the FCRA.  *See id.* at ¶ IV.H. Additionally, Defendant will pay each class member $300 in a settlement check mailed via regular mail to each class member.  *See id.* at ¶ IV.B.1; *see also* ¶ VII.A.  The checks will become void 60 days after the date of mailing.  *Id.*  This payment is separate from any requested service award to the class representative; class counsel's requested attorneys' fees; and the costs Defendant will bear of serving notice to the class of the settlement and for administering the settlement payments. *See id.* at ¶¶ IV.B.2, IV.B.3, VI.J.E.

*Cy Pres* Distribution:  Settlement checks that are undeliverable or not cashed within 60 days of mailing will be void and those funds will be donated to "a recipient to be agreed to by the parties."  SA at ¶¶ IV.B.4, VII.B.  Following the hearing on the motion for preliminary approval, the parties submitted a supplemental declaration identifying the National Consumer Law Center ("NCLC") as the stipulated *cy pres* recipient.  *See* Dkt. No. 51.

Release:  All settlement class members will release:

> any and all claims the Class Member Releasing Parties have under 15 U.S.C. § 1681b(b)(2)(A)(i) and/or 15 U.S.C. §§ 1681b(b)(3)(A)(i) and 16818b(b)(3)(A)(ii).

SA at ¶ XII.A.  In addition, class members:

> shall be deemed to have expressly waived and relinquished, with respect solely to claims the Class Member has or may have under 15 U.S.C. § 1681b(b)(2)(A)(i) and/or 15 U.S.C. §§ 1681b(b)(3)(A)(i) and 1681b(b)(3)(A)(ii), the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law, which provides:
>
> > A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS, THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING

> THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULDHAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

*Id*. The class representative further agrees to release Defendant from:

> any and all manner of claims, grievances, controversies, allegations, accusations, demands, judgments, causes of action, actions, suits, whether class, representative, individual or otherwise in nature, damages whenever incurred, liabilities of any nature whatsoever as well as all forms of relief, including all remedies, costs, losses, liabilities, damages, debts, expenses, penalties, interest, and attorneys' and other professionals' fees and related disbursements, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, asserted or unasserted, whether (a) claiming compensation, money damages, equitable or other type of relief; (b) based on any federal, state, or municipal statute, law, ordinance, or regulation; (c) based on common law or public policy; or (d) sounding in tort or contract, whether oral or written, express or implied, law or equity, statutory or common law, or any other causes of action that the Class Representative Releasing Party, whether directly, representatively, derivatively, or in any other capacity, ever had, now has, or hereafter can, shall, or may have against the Released Parties accruing on or before the Effective Date (collectively, the "Class Representative Released Claims"). It is expressly intended and understood by the parties that this Agreement is to be construed as a complete settlement, accord, and satisfaction of the Class Representative Released Claims.

*Id.* at ¶¶ XII.B, XII.C.

Class Notice:  A third-party settlement administrator will mail the "Notice of Proposed Class Action Settlement and Hearing" (the "Notice") to class members by regular mail within 30 days of the Court's order preliminarily approving the settlement. *See id.* at ¶¶ V.B, V.C.  The settlement administrator will make reasonable efforts to locate class members whose notices are returned as undeliverable such as using the USPS National Change of Address database and commercially available address verification resources.  *Id.*

The notice will include:  the nature of the action, a summary of the settlement terms, and instructions on how to object to and opt out of the settlement, including relevant deadlines.  *See* Dkt. No. 53-2, Ex. B.

Opt-Out Procedure:  The deadline for a class member to submit a request for exclusion is 60 days after the date of the Notice mailing.  SA at ¶ III.K.  Those wishing to do so may mail their request to the settlement administrator.  *See* Dkt. No. 53-2, Ex. B.

1    <u>Incentive Award</u>:  Plaintiff as class representative may apply for incentive award of no
2    more than $15,000.  SA at ¶ IV.B.
3    <u>Attorneys' Fees and Costs</u>:  Class Counsel may file an application for attorneys' fees not to
4    exceed $150,000.  *Id*.

## II.   PROVISIONAL CLASS CERTIFICATION

The plaintiff bears the burden of showing by a preponderance of the evidence that class certification is appropriate under Federal Rule of Civil Procedure 23.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011).  Class certification is a two-step process.  First, a plaintiff must establish that each of the four requirements of Rule 23(a) is met:  numerosity, commonality, typicality, and adequacy of representation.  *Id.* at 349.  Second, he must establish that at least one of the bases for certification under Rule 23(b) is met.  Where, as here, a plaintiff seeks to certify a class under Rule 23(b)(3), he must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

"The criteria for class certification are applied differently in litigation classes and settlement classes."  *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) ("*Hyundai II*").  When deciding whether to certify a litigation class, a district court must consider manageability at trial.  *Id*.  However, this concern is not present in certifying a settlement class.  *Id*. at 556–57.  Thus, in deciding whether to certify a settlement class, a district court "must give heightened attention to the definition of the class or subclasses."  *Id*. at 557.

Because the parties reached settlement before the Court considered class certification in this case, the Court must determine whether provisional certification is appropriate.  As detailed below, the Court finds that it is appropriate under the circumstances.

### A.   Rule 23(a)

#### i.   Numerosity

Rule 23(a) requires that the putative class be "so numerous that joinder of all members is impracticable."  *See* Fed R. Civ. P. 23(a)(1).  A class of approximately 275 putative class members

satisfies the numerosity requirement. *See* Dkt. No. 47 at 13.

### ii. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." A contention is sufficiently common where "it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. Commonality exists where "the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S at 350 (citation omitted) (emphasis omitted). Even a single common question may do to satisfy the commonality requirement. *See id.* at 359.

Here, all members of the proposed class were required to sign the Authorization as part of their employment application process. Thus, whether such a practice violated the FCRA is not only a common question among all class members, but the key question in this litigation.

### iii. Typicality

Next, Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quotation omitted). Under the "permissive standards" of Rule 23(a)(3), the claims need only be "reasonably co-extensive with those of absent class members," rather than "substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). In other words, typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quotation omitted). "The commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157–

7

158, & n.13 (1982). However, typicality—like adequacy—looks at whether the plaintiffs are proper parties to proceed with the suit. *Id.*

As with all putative class members, Defendant requested that Plaintiff sign an Authorization as part of his application process; Defendant obtained a background report; and Defendant then used it to evaluate Plaintiff's application. There is no evidence before the Court to suggest that Plaintiff's claims differ in any way from those of the putative class members. Thus, the typicality requirement is satisfied.

### iv. Adequacy

Finally, Rule 23(a)(4) requires that the "representative parties will fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). On this question of adequacy, the Court must address two legal questions: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other putative class members; and (2) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the proposed class. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). This inquiry too "tend[s] to merge" with the commonality and typicality criteria. *See Falcon*, 457 U.S. at 158, n.13.

There is no indication that Plaintiff has any conflict of interest with any putative class member. Moreover, Plaintiff has secured representation by competent counsel, experienced in consumer class actions generally and FCRA cases specifically. *See, e.g.*, Dkt. No. 47 at 15–16 (collecting cases). The Court accordingly finds the adequacy requirement is satisfied.

## B. Rule 23(b)(3)

Additionally, to certify a class, a plaintiff must satisfy the two requirements of Rule 23(b)(3). *First*, "questions of law or fact common to class members [must] predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). *Second*, "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.*

### i. Predominance

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045

1  (2016) (quotation omitted).  The Supreme Court has defined an individualized question as one
2  where "members of a proposed class will need to present evidence that varies from member to
3  member."  *Id.* (quotations omitted).  A common question, on the other hand, is one where "the
4  same evidence will suffice for each member to make a prima facie showing [or] the issue is
5  susceptible to generalized, class-wide proof."  *Id.* (quotation omitted).

6  The Court concludes that for purposes of settlement, common questions predominate here,
7  because the putative class members were exposed to similar Authorizations and Defendant used
8  the resulting background reports to evaluate their suitability for employment.

   **ii.** **Superiority**

The superiority requirement tests whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The Court considers four non-exclusive factors:  (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action.  *Id.*

The Court concludes that a class action enables the most efficient use of Court and attorney resources and reduces costs to the putative class members by allocating costs among them. Further, this forum is appropriate, and there are no obvious difficulties in managing this class action.

The Court finds that the predominance and superiority requirements of Rule 23(b)(3) are met.

  **C.** **Class Representative and Class Counsel**

Because the Court finds that Plaintiff meets the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints Plaintiff as class representative.  When a court certifies a class, it must also appoint class counsel.  Fed. R. Civ. P. 23(c)(1)(B).  Factors that courts must consider when making that decision include:

   (i) the work counsel has done in identifying or investigating potential

>>claims in the action;
>>(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>>(iii) counsel's knowledge of the applicable law; and
>>(iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

Counsel have investigated and litigated this case throughout its existence and have listed their myriad cases representing plaintiffs in consumer class actions. *See* Dkt. No. 47 at 15–16. Accordingly, the Court appoints the law firms of SmithMarco, P.C and Francis Mailman Soumilas, P.C. as class counsel.

## III. PRELIMINARY SETTLEMENT APPROVAL

### A. Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

Where the parties reach a class action settlement prior to class certification, district courts apply "'a higher standard of fairness' and 'a more probing inquiry than may normally be required under Rule 23(e).'" *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012). Such settlement agreements "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). A more "'exacting review' is warranted 'to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent.'" *Id.* (quotations omitted).

Courts may preliminarily approve a settlement and notice plan to the class if the proposed

settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018). Courts lack the authority, however, to "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Hanlon*, 150 F.3d at 1026.

### B. Analysis

#### i. Evidence of Conflicts and Signs of Collusion

The first factor the Court considers is whether there is evidence of collusion or other conflicts of interest. *See Roes*, 944 F.3d at 1049. The Ninth Circuit has directed district courts to look for "subtle signs of collusion," which include whether counsel will receive a disproportionate distribution of the settlement, whether the parties negotiate a "'clear sailing' arrangement (i.e., an arrangement where defendant will not object to a certain fee request by class counsel)," and whether the parties agree to a reverter that returns unclaimed funds to the defendant. *Id*.

As discussed above, the proposed settlement is non-reversionary, with all unclaimed funds awarded to a *cy pres* recipient, the NCLC. SA at ¶¶ IV.B.4. VII.B; *see also* Dkt. No. 51. However, the Settlement Agreement contains a clear sailing arrangement, which states that "Class Counsel's attorneys' fees and costs shall be capped at the sum of One Hundred and Fifty Thousand, Dollars ($150,000.00), and Defendant agrees to pay and will not object to any application for fees and costs that does not exceed that amount, subject to Court approval." SA at ¶ IV.B.3.

##### a. Clear Sailing Provision

Clear sailing provisions are not prohibited, though they "'by [their] nature deprive[] the court of the advantages of the adversary process' in resolving fee determinations and are therefore disfavored." *Id.* at 1050 (quoting *In re Bluetooth*, 654 F.3d at 949) (alterations in original). The Ninth Circuit has noted that clear sailing arrangements are "important warning signs of collusion," because "'[t]he very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class.'" *Id*. at 1051 (quoting *In*

11

*re Bluetooth*, 654 F.3d at 948). Accordingly, when confronted with a clear sailing provision, the district court has a heightened duty to "scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested." *Id.* (quotation omitted).

Here, counsel may request fees and costs of up to $150,000. *See id.* at ¶ VIII. Such fees and costs, even were the Court to award them in their entirety, however, do not diminish the recovery to the class members under the settlement. The $300 payment to each class member is unaffected by any requested attorneys' fees. *See id.* at ¶¶ IV.B.2, IV.B.3, VI.J.E. The Court also recognizes that class counsel obtained tangible results for the prospective class members, as discussed in Section III.B.iii. below. The Court acknowledges that the *maximum* total recovery to the prospective class members would only be approximately $82,500 ($300 x 275 class members), which is considerably less than the maximum attorneys' fees class counsel may seek.

Nevertheless, class counsel did assume substantial risk in litigating this action on a contingency fee basis, and incurring costs without the guarantee of payment for its litigation efforts. That risk is even more acute under the circumstances, as class members' statutory recovery under the FCRA is capped at $1,000 in statutory damages for each member of a class. *See* 15 U.S.C. § 1681n(a)(1)(A). The attorneys' fees and costs necessary to litigate an FCRA class action thus may often exceed any possible recovery. Under the circumstances, the Court does not find it unreasonable that counsel may request attorneys' fees of up to $150,000. The Court is cognizant of its obligations to review class fee awards with particular rigor, and at the final approval stage will carefully scrutinize the circumstances and determine what attorneys' fees award is appropriate in this case. Accordingly, given that the settlement is non-reversionary and any attorneys' fees will not diminish the class recovery, the Court does not find that the clear sailing provision weighs against preliminary approval.

### b. *Cy Pres* Distribution

The Court must also evaluate whether the parties' proposed *cy pres* recipient is appropriate. A *cy pres* award must qualify as "the next best distribution" to giving the funds to class members. *Dennis*, 697 F.3d at 865. "Not just any worthy recipient can qualify as an

appropriate *cy pres* beneficiary," and there must be a "'driving nexus between the plaintiff class and the *cy pres* beneficiaries.'" *Id.* (citation omitted). That is to say, a *cy pres* award must be "'guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff class.'" *Id.* (citations omitted). A *cy pres* distribution is not appropriate if there is "'no reasonable certainty' that any class member would benefit from it." *Id.* (citation omitted).

Here, the parties have selected the NCLC as their *cy pres* recipient. *See* Dkt. No. 51. The NCLC advocates for and provides resources to low-income consumers throughout the United States. *Id.* Accordingly, the Court preliminarily finds that there is a sufficient nexus between the *cy pres* recipient and the class, as the NCLC shares the interests of the class members in protecting access to justice, regardless of socioeconomic status.

### ii. Preferential Treatment

The Court next considers whether the settlement agreement provides preferential treatment to any class member. The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetooth*, 654 F.3d at 947. For that reason, courts in this district have consistently stated that preliminary approval of a class action settlement is inappropriate where the proposed agreement "improperly grant[s] preferential treatment to class representatives." *Lenovo*, 2018 WL 6099948, at *8 (quotations omitted).

Although the Settlement Agreement authorizes Plaintiff to seek an incentive award of no more than $15,000 for his role in this lawsuit, *see* SA at ¶ IV.B, the Court will ultimately determine whether he is entitled to such an award and the reasonableness of the amount requested. Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Plaintiff must provide sufficient evidence to allow the Court to evaluate his award "individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in

pursuing the litigation . . . .'" *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). The Court will consider the evidence presented at the final fairness hearing and evaluate the reasonableness of any incentive award request. Nevertheless, because incentive awards are not per se unreasonable, the Court finds that this factor weighs in favor of preliminary approval. *See Rodriguez*, 563 F.3d at 958 (finding that "[i]ncentive awards are fairly typical in class action cases" and "are discretionary" (emphasis omitted)).

### iii. Settlement within Range of Possible Approval

The third factor the Court considers is whether the settlement is within the range of possible approval. To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Lenovo*, 2018 WL 6099948, at *8. This requires the Court to evaluate the strength of Plaintiff's case.

Here, the total settlement amount of $82,500 constitutes approximately 30% of the $275,000 maximum statutory recovery for the approximately 275 class members. *See* 15 U.S.C. § 1681n(a)(1)(A). Plaintiff acknowledges that he would face substantial risk in continuing to litigate this case, such as maintaining class treatment and prevailing at trial. Dkt. No. 47 at 10–11. The Court finds that the settlement amount, given these risks, weighs in favor of granting preliminary approval.

### iv. Obvious Deficiencies

The fourth and final factor that the Court considers is whether there are obvious deficiencies in the settlement agreement. The Court finds no obvious deficiencies, and therefore finds that this factor weighs in favor of preliminary approval.

\*   \*   \*

Having weighed the relevant factors, the Court preliminarily finds that the settlement agreement is fair, reasonable, and adequate, and **GRANTS** preliminary approval. The Court **DIRECTS** the parties to include both a joint proposed order and a joint proposed judgment when submitting their motion for final approval.

## IV. PROPOSED CLASS NOTICE PLAN

For Rule 23(b)(3) class actions, "the court must direct notice to the class members the best

1  notice that is practicable under the circumstances, including individual notice to all members who
2  can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  Individual notice must
3  be sent to all class members "whose names and addresses may be ascertained through reasonable
4  effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

5  Here, the notice plan provides direct notice via mail to class members, and the settlement
6  administrator will make reasonable efforts to locate class members whose notices are returned as
7  undeliverable such as using the USPS National Change of Address database and commercially
8  available address verification resources.  *See id.* at ¶¶ V.B, V.C.  The Court finds that the proposed
9  notice process is "'reasonably calculated, under all the circumstances,' to apprise all class
10 members of the proposed settlement." *Roes*, 944 F.3d at 1045.

11 With respect to the content of the notice itself, the notice must clearly and concisely state
12 in plain, easily understood language:

   (i)   the nature of the action;
   (ii)  the definition of the class certified;
   (iii) the class claims, issues, or defenses;
   (iv)  that a class member may enter an appearance through an attorney if the member so desires;
   (v)   that the court will exclude from the class any member who requests exclusion;
   (vi)  the time and manner for requesting exclusion; and
   (vii) the binding effect of a class judgment on members[.]

19 Fed. R. Civ. P. 23(c)(2)(B).  The Court finds that the content of the proposed notices, Dkt. No.53-
20 2, Ex. B, provides sufficient information about the case and thus conforms with due process
21 requirements.  *See Hyundai II*, 926 F.3d at 567 ("Notice is satisfactory if it generally describes the
22 terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and
23 to come forward and be heard." (quotations omitted)).

24 **V.   CONCLUSION**

25 For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for preliminary approval
26 of class action settlement.  The parties are **DIRECTED** to meet and confer and stipulate to a
27 schedule of dates for each event listed below, which shall be submitted to the Court within seven
28 days of the date of this Order:

| Event | Date |
|---|---|
| Deadline for Settlement Administrator to mail notice to all putative Class Members | |
| Filing deadline for attorneys' fees and costs motion | |
| Filing deadline for incentive payment motion | |
| Deadline for Class Members to opt-out or object to settlement and/or application for attorneys' fees and costs and incentive payment | |
| Filing deadline for final approval motion | |
| Final fairness hearing and hearing on motions | |

The parties are further **DIRECTED** to implement the proposed class notice plan.

**IT IS SO ORDERED.**

Dated:  4/17/2020

*Haywood S. Gilliam Jr.*
HAYWOOD S. GILLIAM, JR.
United States District Judge