UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS DER-HACOPIAN,<br><br>    Plaintiff,<br><br>v.<br><br>DARKTRACE, INC.,<br><br>    Defendant. | Case No. 18-cv-06726-HSG<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES AND INCENTIVE AWARD**<br><br>Re: Dkt. Nos. 60, 61 |

Pending before the Court are Plaintiff's motions for final approval of class action settlement and for attorneys' fees and a class representative incentive award. Dkt. Nos. 60, 61. The Court held a final fairness hearing on September 10, 2020. Dkt. No. 66. As noted in the motion for final approval and as discussed during the hearing, notice pursuant to the Class Action Fairness Act ("CAFA") was not mailed until August 27, 2020. The Court therefore directed the parties to file a status report regarding whether the parties received any response to the CAFA notice, and held the motions in abeyance during the interim. *See* Dkt. Nos. 66, 67. Having received the parties' status report, Dkt. No. 68, and for the reasons detailed below, the Court **GRANTS** Plaintiff's motion for final approval. The Court further **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion for attorneys' fees and an incentive award.

I.  **BACKGROUND**

    A.  **Factual Background**

Plaintiff brings this consumer class action against Defendant Darktrace, Inc. alleging that Defendant violated the Fair Credit Reporting Action ("FCRA"), 15 U.S.C. §§ 1681 *et seq. See generally* Dkt. No. 23 ("FAC"). Plaintiffs allege that as part of Defendant's employment

application process, it requires consumer reports, known as background checks, to evaluate prospective employees. *See id.* at ¶ 13. According to Plaintiff, Defendant (1) included a release of future liability in the authorization that it required employment applicants to sign authorizing a background check; and (2) used the background checks to make adverse employment decisions without timely providing the prospective employee with a copy of the report and a summary of his or her rights under the FCRA. *See id.* at ¶¶ 15–27, & Ex. A. But Section 1681b(b)(2) requires consumer report authorizations to consist "solely of the disclosure that a consumer report may be obtained for employment purposes." 15 U.S.C. § 1681b(b)(2)(A)(i). And § 1681b(b)(3) requires that "in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates" a copy of the report and a written description of the consumer's rights under the FCRA. *See* 15 U.S.C. § 1681b(b)(3)(A)(i), (ii).

Plaintiff thus brought two causes of action under Sections 1681(b)(2) and (b)(3) of the FCRA. *See* FAC at ¶¶ 45–58. Plaintiff also sought to represent two classes of consumers based on each claim, defined as:

> All natural persons residing within the United States and its Territories regarding whom, beginning five (5) years prior to the filing of this Complaint and continuing through the conclusion of this action, the Defendant procured or caused to be procured a consumer report for employment purposes using a written disclosure containing language substantially similar in form to the Employee Authorization to Release Records form provided to Plaintiff; and

> All natural persons residing in the United States who (i) within five (5) years prior to the filing of the Complaint, (ii) applied for employment with Defendant, (iii) were the subject of a consumer report used by Defendant for employment purposes, (iv) were the subject of an adverse employment action by Defendant, and (iv) were not provided with a copy of the report and/or a written summary of their rights under the FCRA prior to the adverse action.

*See id.* at ¶ 38.

### B. Procedural History

Plaintiff initially filed this action on November 6, 2018. *See* Dkt. No. 1. Plaintiff then filed his first amended complaint on January 16, 2019. *See* FAC. The parties did not engage in

1  motions practice, and instead, on April 24, 2019, the parties engaged in an all-day mediation. *See*
2  Dkt. No. 39.  Although the parties did not reach settlement that day, they continued settlement
3  discussions.  *See* Dkt. No. 40.  The parties ultimately entered into a settlement agreement on
4  November 21, 2019.  *See* Dkt. No. 47-1.  Plaintiff subsequently filed a motion for preliminary
5  settlement approval.  *See* Dkt. No. 43 (refiled at Dkt. No. 47).

6  On March 31, 2020, the Court requested supplemental briefing from the parties regarding
7  the scope of the settlement release.  *See* Dkt. No. 52.  The Court raised concerns that although the
8  allegations were relatively narrow, the release of claims in the settlement agreement as then
9  written was more expansive.  *Id.* (citing *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010)).
10 In response, the parties narrowed the scope of the release of claims.  *See* Dkt. No. 53.  They
11 submitted a revised Settlement Agreement, Dkt. No. 53-1, Ex. A ("SA"), and a revised Notice of
12 Settlement, Dkt. No. 53-2, Ex. B.  With these changes, the Court granted the motion for
13 preliminary approval.  *See* Dkt. No. 54.

### C. Settlement Agreement

The key terms of the parties' settlement are as follows:

Class Definition:  The Settlement Class is defined as:

> [A]ll applicants for employment with and employees of DarkTrace from whom DarkTrace obtained the individual's consent to procure a consumer report using a form document substantially similar to the authorization form signed by Plaintiff; and procured or caused to be procured a consumer report, as defined by the FCRA, between November 5, 2016 and the date the Final Judgment and Order approving this Settlement Agreement is entered by the Court.

SA at ¶ III.C.

Settlement Benefits:  The parties have agreed to both non-monetary and monetary relief.
Moving forward, Defendant will comply with the disclosure, authorization, and notice practices
relating to obtaining consumer reports and the provision of consumer reports and summaries of
rights referenced in §§ 1681b(b)(2)(A)(i) and 1681b(b)(3) of the FCRA.  *See id.* at ¶ IV.H.
Additionally, Defendant will pay each class member $300 in a settlement check mailed via regular
mail to each class member.  *See id.* at ¶ IV.B.1; *see also* ¶ VII.A.  The checks will become void 60
days after the date of mailing.  *Id.*  This payment is separate from any requested service award to

the class representative; class counsel's requested attorneys' fees; and the costs Defendant will bear in serving notice to the class of the settlement and for administering the settlement payments. *See id.* at ¶¶ IV.B.2, IV.B.3, VI.J.E.

  <u>*Cy Pres* Distribution</u>:  Settlement checks that are undeliverable or not cashed within 60 days of mailing will be void and those funds will be donated to "a recipient to be agreed to by the parties." SA at ¶¶ IV.B.4, VII.B. Following the hearing on the motion for preliminary approval, the parties submitted a supplemental declaration identifying the National Consumer Law Center ("NCLC") as the stipulated *cy pres* recipient.  *See* Dkt. No. 51.

  <u>Release</u>:  All settlement class members will release:

> any and all claims the Class Member Releasing Parties have under 15 U.S.C. § 1681b(b)(2)(A)(i) and/or 15 U.S.C. §§ 1681b(b)(3)(A)(i) and 16818b(b)(3)(A)(ii).

SA at ¶ XII.A.  In addition, class members:

> shall be deemed to have expressly waived and relinquished, with respect solely to claims the Class Member has or may have under 15 U.S.C. § 1681b(b)(2)(A)(i) and/or 15 U.S.C. §§ 1681b(b)(3)(A)(i) and 1681b(b)(3)(A)(ii), the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law, which provides:
>
>> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS, THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

*Id*.  The class representative further agrees to release Defendant from:

> any and all manner of claims, grievances, controversies, allegations, accusations, demands, judgments, causes of action, actions, suits, whether class, representative, individual or otherwise in nature, damages whenever incurred, liabilities of any nature whatsoever as well as all forms of relief, including all remedies, costs, losses, liabilities, damages, debts, expenses, penalties, interest, and attorneys' and other professionals' fees and related disbursements, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, asserted or unasserted, whether (a) claiming compensation, money damages, equitable or other type of relief; (b) based on any federal, state, or municipal statute, law, ordinance, or regulation; (c) based on common law or public policy; or (d) sounding in tort or contract, whether oral or written, express or implied, law or

4

> equity, statutory or common law, or any other causes of action that the Class Representative Releasing Party, whether directly, representatively, derivatively, or in any other capacity, ever had, now has, or hereafter can, shall, or may have against the Released Parties accruing on or before the Effective Date (collectively, the "Class Representative Released Claims"). It is expressly intended and understood by the parties that this Agreement is to be construed as a complete settlement, accord, and satisfaction of the Class Representative Released Claims.

*Id.* at ¶¶ XII.B, XII.C.

Class Notice: A third-party settlement administrator will mail the "Notice of Proposed Class Action Settlement and Hearing" (the "Notice") to class members by regular mail within 30 days of the Court's order preliminarily approving the settlement. *See id.* at ¶¶ V.B, V.C. The settlement administrator will make reasonable efforts to locate class members whose notices are returned as undeliverable such as using the USPS National Change of Address database and commercially available address verification resources. *Id.*

The notice will include: the nature of the action, a summary of the settlement terms, and instructions on how to object to and opt out of the settlement, including relevant deadlines. *See* Dkt. No. 53-2, Ex. B.

Opt-Out Procedure: The deadline for a class member to submit a request for exclusion is 60 days after the date of the Notice mailing. SA at ¶ III.K. Those wishing to do so may mail their request to the settlement administrator. *See* Dkt. No. 53-2, Ex. B.

Incentive Award: Plaintiff as class representative may apply for incentive award of no more than $15,000. SA at ¶ IV.B.

Attorneys' Fees and Costs: Class Counsel may file an application for attorneys' fees not to exceed $150,000. *Id*.

## II. ANALYSIS

### A. Final Settlement Approval

#### i. Class Certification

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019–1022 (9th Cir. 1998). Because no facts that

would affect these requirements have changed since the Court preliminarily approved the class on April 17, 2020, this order incorporates by reference its prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval. *See* Dkt. No. 54 at 6–9.

### ii. The Settlement

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("The district court's role in evaluating a proposed settlement must be tailored to fulfill the objectives outlined above. In other words, the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties . . . "). To assess whether a proposed settlement comports with Rule 23(e), the Court "may consider some or all" of the following factors: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *see also Hanlon*, 150 F.3d at 1026. "The relative degree of importance to be attached to any particular factor" is case specific. *Officers for Justice*, 688 F.2d at 625.

In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. As discussed below, the Court finds that the proposed settlement is fair, adequate, and reasonable, and that class members received adequate notice.

### a. Adequacy of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).

Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B). Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice).

The Court finds that the notice and notice plan previously approved by the Court was implemented and complies with Rule 23(c)(2)(B). *See* Dkt. No. 54 at 5, 14–15. The Court ordered the third-party settlement administrator, American Legal Claims Services ("ALCS"), to send class notice via U.S. mail based on a class list Defendant provided. *Id*. at 5, 15. ALCS represents that class notice was provided as directed. Dkt. No. 61-1, Ex. A at ¶¶ 3–6. ALCS verified the mailing addresses from the class list with the National Change of Address Database. *Id*. ¶ 3. A total of 274 Class Notices were sent out, and 47 were initially returned as undeliverable. *Id.* at ¶¶ 4–5. ALCS performed an address trace to find more current addresses and was able to re-mail 30 of the returned Class Notices. *Id*. ¶ 5. Only one of these re-mailed Class Notices was returned. *Id.* at ¶¶ 5–6  Thus, as of August 19, 2020, only 18 of the 274 Class Notices were undeliverable. *Id*. at ¶ 6. During the final fairness hearing, the parties confirmed that ALCS did not receive any further forwarding addresses. Therefore, 256 class members, or approximately 93.4%, are assumed to have received the Class Notice.

In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to the class members.[1]

### b. Fairness, Adequacy, and Reasonableness

Having found the notice procedures adequate under Rule 23(e), the Court next considers

---

[1] The Court notes that following the final fairness hearing, the parties confirmed that ALCS oversaw the dissemination of CAFA Notice to Attorneys General. *See* Dkt. No. 68. Notices were mailed on August 27, 2020, and as of December 2, 2020, the Notice Administrator had not received any response from any CAFA served party. *Id.*

whether the entire settlement comports with Rule 23(e).

### 1. Strength of Plaintiff's Case and Litigation Risk

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Courts "may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010). Additionally, difficulties and risks in litigating weigh in favor of approving a class settlement. *Rodriguez*, 563 F.3d at 966. "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (quotations omitted).

The Court finds that the amount offered in settlement is reasonable in light of the complexity of this litigation and the substantial risk Plaintiff would face in litigating the case given the nature of the asserted claims. *See* Dkt. No. 61 at 9–10. In particular, to receive statutory or punitive damages in this case, Plaintiff would have to establish that Defendant acted willfully and not merely carelessly. *See Safeco Insurance Co. of America v. Burr*, 551 U.S. 47, 57–60, 68–69 (2007). Defendant also indicated that it would appeal any decision in Plaintiff's favor, including any order certifying a class. *See* Dkt. No. 61 at 9. In reaching a settlement, however, Plaintiff has ensured a favorable recovery for the class. *See Rodriguez*, 563 F.3d at 966 (finding litigation risks weigh in favor of approving class settlement). Accordingly, these factors weigh in favor of approving the settlement. *See Ching*, 2014 WL 2926210, at *4 (favoring settlement to protracted litigation).

### 2. Risk of Maintaining Class Action Status

In considering this factor, the Court looks to the risk of maintaining class certification if the litigation were to proceed. Certifying a class of 274 individuals would likely present complex issues, and Defendant has indicated that it would have argued vigorously against class certification. *See* Dkt. No. 61 at 10. For example, Defendant raises concerns regarding

ascertainability and whether class members suffered any damages as a result of any alleged FCRA violations (which could impact the superiority and manageability calculus). *See id.* Accordingly, this factor also weighs in favor of settlement.

### 3. Settlement Amount

The amount offered in the settlement is another factor that weighs in favor of approval. Based on the facts in the record and the parties' arguments at the final fairness hearing, the Court finds that paying each class member $300, a settlement amount of approximately $76,800,[2] falls "within the range of reasonableness" in light of the risks and costs of litigation. *See* Dkt. No. 61 at 10–11; *see, e.g.*, *Villanueva v. Morpho Detection, Inc.*, No. 13-cv-05390-HSG, 2016 WL 1070523 *4 (N.D. Cal. March 18, 2016) (citing cases). Under the FCRA, statutory damages may range from $100 to $1,000. *See* 15 U.S.C. § 1681n(a)(1)(A). Thus, the settlement amount constitutes approximately 30% of the maximum statutory recovery for class members. In addition to the individual payments, Defendant will pay approximately $15,000 to the ALCS for the settlement administration fees and costs. In addition to the monetary relief, Defendant has agreed to revise its disclosure, authorization, and notice requirements when running background checks on prospective employees. This factor therefore weighs in favor of approval.

### 4. Extent of Discovery Completed and Stage of Proceedings

The Court finds that Class Counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). The parties settled only after they engaged in discovery to understand the potential strengths and weaknesses of Plaintiff's case. Dkt. No. 61 at 11. Even after reaching an impasse during the mediation, the parties continued their settlement discussions and ultimately reached an agreement under which class members would receive the $300 settlement without having to submit a claim. The Court finds that the parties reviewed materials and engaged in discussion sufficient to allow them to assess the likelihood of success on the merits. This factor weighs in favor of approval.

---

[2] This figure is calculated based on $300 for each of the 256 class members who received notice in this action. *See* Dkt. No. 61-1, Ex. A at ¶¶ 3–6.

### 5. Reaction of Class Members

The reaction of the class members supports final approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

Class notice, which was served in accordance with the method approved by the Court, advised the class members of the requirements to object to or opt out of the settlement. The deadline to object to or opt out of the settlement was July 28, 2020. Dkt. No. 59. ALCS received no objections and no requests for exclusion. *See* Dkt. No. 61-1, Ex. A at ¶¶ 7–8. During the final fairness hearing, the parties confirmed that they did not receive any objections or requests for exclusion even after this deadline passed. ALCS also confirmed that it did not receive any responses from the Attorneys General served with the CAFA notice. *See* Dkt. No. 68. The Court finds that the lack of objections and opt-outs in comparison to the size of the class indicate overwhelming support among the class members and weigh in favor of approval. *See*, *e.g.*, *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement where 45 of approximately 90,000 class members objected); *Rodriguez v. West Publ. Corp.*, Case No. CV05–3222 R, 2007 WL 2827379, at *10 (C.D. Cal. Sept. 10, 2007) (finding favorable class reaction where 54 of 376,301 class members objected).

\*   \*   \*

After considering and weighing the above factors, the Court finds that the settlement agreement is fair, adequate, and reasonable, and that the settlement class members received adequate notice. Accordingly, Plaintiff's motion for final approval of the class action settlement is **GRANTED**.

### B. Attorneys' Fees, Costs and Expenses, and Class Representative Enhancement Payment

In its unopposed motion, Class Counsel asks the Court to approve an award of $150,000 in

10

attorneys' fees and costs. Dkt. No. 60 at 1–10. Class Counsel also seeks a $15,000 incentive award for the named Plaintiff. *Id.* at 10–11.

### i. Attorneys' Fees

#### a. Legal Standard

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Moreover, those who violate the FCRA are liable for reasonable attorney's fees and costs as determined by the Court. *See* 15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2). Class Counsel is entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotations omitted). Nevertheless, "[a]ttorneys' fees provisions included in proposed class action settlement agreements are, like every other aspect of such agreements, subject to the determination whether the settlement is 'fundamentally fair, adequate, and reasonable.'" *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003) (quoting Fed. R. Civ. P. 23(e)).

Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citing *Staton*, 327 F.3d at 965). "[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quotation omitted). Generally, "the relevant community is the forum in which the district court sits." *Id.* (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)). Typically, "affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). "In addition to affidavits from the fee applicant, other evidence of prevailing market rates may include affidavits from other area attorneys or examples of rates awarded to counsel in previous cases." *Schuchardt*

1  *v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 687 (N.D. Cal. 2016).  Any award must be

2  supported "by findings that take into account all of the circumstances of the case."  *Vizcaino v.*

3  *Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).

### b. Discussion

Class Counsel here seeks $150,000 in fees and costs.  *See* Dkt. No. 63 at 1–10.  Class Counsel calculate their lodestar as follows:  Francis Mailman Soumilas, P.C. incurred 176 hours of attorney and paralegal time, or $104,602.50, as well as $13,815.90 in unreimbursed costs; SmithMarco, P.C. incurred 186.2 hours of attorney and paralegal time, or $90,917.50; and Tatar Law Firm, which served as local counsel, incurred 13.2 hours of attorney time, or $6,600.  Thus, in total, Class Counsel spent over 375 hours on this action, totaling $202,120, and incurred $19,019 in expenses, for a total of fees and costs of $221,139.

With respect to hourly rates, the rates requested are between $145 and $225 for paralegal time, $400 for associates, and $500 to $775 for partners.  *See* Dkt. No. 63-1 ¶ 6; Dkt. No. 60-2, Ex. 3; Dkt. No. 60-6, Ex. 8; Dkt. No. 60-7, Appendix 2; Dkt. No. 60-9, Ex. B.  The Court finds that the billing rates used by Class Counsel to calculate the lodestar are reasonable and in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation.  *See, e.g.*, *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (rates from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals reasonable "given the complexities of this case and the extraordinary result achieved for the Class.").  The time spent in this action also appears reasonable over the course of the approximately two years of litigation.

The Court also recognizes that Class Counsel obtained significant results for the class.  The settlement amount represents approximately 30% of class members' maximum statutory recovery.  Moreover, no class member objected to the settlement or requested exclusion, suggesting strong support for the settlement's outcome.  Further, Class Counsel assumed substantial risk in litigating

12

this action on a contingency fee basis, and incurring costs, with "no guarantee that they would receive any remuneration for the many hours [] they spent litigating." Dkt. No. 60 at 8. With respect to the quality of litigation, the successful result involved significant commitment, persisting even after the parties did not initially settle the case during mediation.

Accordingly, the Court **GRANTS** attorneys' fees and costs totaling $150,000.

### ii. Incentive Award

Lastly, Class Counsel also requests an incentive award of $15,000 for the named Plaintiff. *See* Dkt. No. 60. District courts have discretion to award incentive fees to named class representatives. *See In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). However, the Court shares the Ninth Circuit's concerns that "if class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *See Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003); *Radcliffe v. Experian Information Sols. Inc.*, 715 F.3d 1157, 1163–64 (9th Cir. 2013) (noting that the Ninth Circuit has "expressed disapproval of these incentive agreements" and that "in some cases incentive awards may be proper but . . . awarding them should not become routine practice"). The Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives . . . ." *Radcliffe*, 715 F.3d at 1165 (quotations omitted). This is particularly true where "the proposed service fees greatly exceed the payments to absent class members." *Id.*

The Court has concerns about the requested incentive award in this case where the amount named Plaintiff would receive is disproportionate to the monetary award that other class members would receive. Class Counsel requests an incentive award for named Plaintiff that is fifty times more than the settlement award other class members would receive. Nevertheless, given the benefit Plaintiff helped obtain for the class, the Court finds an award of $1,500 to be adequate and appropriate. The Court accordingly **GRANTS IN PART** the request for an incentive award.

### III. CONCLUSION

Accordingly, the Court **GRANTS** the motion for final approval of class action settlement

and **GRANTS IN PART** the motion for attorneys' fees and incentive award. The Court approves the settlement amount of $300 per class member; settlement administrator costs in the amount of $15,000; attorneys' fees and costs in the amount of $150,000. The Court further awards named Plaintiff an incentive award of $1,500.

The parties and settlement administrator are directed to implement this Final Order and the settlement agreement in accordance with the terms of the settlement agreement. The parties are further directed to file a short stipulated final judgment of two pages or less within 21 days from the date of this order. The judgment need not, and should not, repeat the analysis in this order.

**IT IS SO ORDERED.**

Dated: 12/10/2020

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge